UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 08-0224 (JDB)** |
| | : | |
| v. | : | |
| | : | |
| **ERIK M. LAMB,** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits this memorandum in aid of sentencing and moves the Court pursuant to Section 3E1.1(b) of the United States Sentencing Guidelines ("Guidelines") to reduce the otherwise applicable sentencing guideline range to reflect the defendant's early acceptance of responsibility in this case.

### Factual and Procedural Background

The facts underlying this case are set forth in detail in the factual proffer submitted at the time the defendant entered his pleas of guilty and in the Presentence Report ("PSR"). We summarize them briefly here. The defendant first came to the attention of authorities in this case on May 17, 2007 when, using the e-mail address "Givesamouthful" and the display name "John Smith", he sent a photograph of a clothed female child in a baseball uniform to Metropolitan Police Department ("MPD") Detective Timothy Palchak who was working on-line in an undercover capacity as part of an MPD/Federal Bureau of Investigation ("FBI") Task Force. The photograph was accompanied by the message, "here is a picture of my in softball."

Detective Palchak had no further contact with the individual using the e-mail address Givesamouthful", later identified as the defendant, until almost a year later in April 2008, when the defendant re-initiated contact with Detective Palchak by e-mail. Between April 21, 2008 and the time of the defendant's arrest on July 15, 2008, the defendant and Detective Palchak engaged in on-line conversations in which the defendant fantasized about sexually abusing young children. In addition to communicating on-line, Detective Palchak and the defendant had two telephone conversations during this period. The defendant had given Detective Palchak the number of a cellular telephone to call; the phone was not subscribed to by the defendant however. Investigation determined that the Internet Protocol, or "IP" addresses associated with the log in times that "Givesamouthful" was communicating with Palchak were registered to by entities with publically accessible computers in the Santa Clara, California area, including the Campbell City library in Campbell City, California.

On July 15, 2008, while the defendant was on-line communicating with Detective Palchak, FBI agents placed the library under surveillance. They observed a male using a computer. When Detective Palchak placed a call to the cell phone number provided by "Givesamouthful", agents observed the defendant pick up a cellular phone and speak. As they approached him, Detective Palchak could hear the conversation between the agents and the defendant.

The defendant was arrested and after waiving his Miranda[1] rights, admitted to communicating with Detective Palchak via the Internet and to sending the images and videos of child pornography. On July 18, 2008, a search warrant was executed at his residence, and a

---

[1] Miranda v. United States, 384 U.S. 436 (1966).

computer and USB drive seized. Over 1,000 additional images of child pornography were recovered in those devices. Among the material that the defendant sent to Detective Palchak and/or were recovered from the defendant's computer was the following:

> Prepubescent girls performing oral sex on adult males
>
> A girl who appears to be about six to seven years-old, nude, blindfolded and bound at the wrists, posed to expose her genitalia
>
> A nude pre-pubescent girl wearing a dog collar bound and tied to a bench appearing to be about to engage in a sex act with a dog
>
> A girl who appears to be no more than seven to eight years-old, nude, blindfolded, bound and strung up from the ceiling
>
> A video of a child who appears to be 18 months to two years-old bound by restraints as she is anally sodomized by an adult male
>
> A four to five year-old girl being held down and having an adult male's penis forced in her mouth
>
> A girl who appears to be about two years-old crying as she is restrained and penetrated vaginally by an adult male[2]

After the defendant was identified, it was determined that he had previously been convicted of the misdemeanor offense of Communication with a Minor for Immoral Purposes in Washington State in 2005 when he was 18 years-old. The facts underlying that case in which the defendant initially was charged with Rape of a Child in the First Degree are set forth in the PSR. The charges arose out of allegations by a then seven year-old male relative that the defendant had

---

[2] We strongly encourage the Court to view at least some of the images and videos that form the basis of the charges in this case in order to understand fully the nature of the defendant's conduct. We can provide the material to the Court prior to sentencing, or make it available at the sentencing hearing as the Court prefers.

placed his penis in his "butt."[3] Ultimately the defendant entered a guilty plea to the offense of communication with a minor for immoral purposes.

During the course of the investigation, the defendant's mother advised investigators that in October 2004 she discovered images of very young children engaged in sexual activity in a binder in the defendant's bedroom. Police officers who later conducted a consent search of the defendant's bedroom noted a pair of size "2/T -3T"[toddler] girl's underpants in the defendant's closet and a brown bag containing cutouts of children and a binder of drawings of young children engaged in sexual acts. In an interview with a detective on March 24, 2005, the defendant admitted buying the underpants and keeping the cutouts and photographs of young children. He said he did so because he still had "those fantasies every once in a while..." The defendant denied touching or engaging in any sexual activity with the seven year-old relative.

After his arrest in the instant case, the defendant was indicted on charges of Transportation of Child Pornography. He entered into plea negotiations with the government, and on May 7, 2009, pursuant to a plea agreement, he pleaded guilty to a two count Information charging him with Transportation of Child Pornography and Possession of Child Pornography. The latter count was based on his possession of child pornography in California; the defendant waived objections to venue and agreed to be prosecuted in the District of Columbia for that offense. In exchange, the United States Attorney's office for the Northern District of California agreed to forgo prosecution for related offenses.

---

[3] PSR page 9 ¶ 2 citing transcript of interview juvenile J.A.L. on March 2, 2005 contained in a prosecution court filing in Kitsap County, Washington on April 20, 2005.

**Motion for Reduction of Offense Level Pursuant to Section 3E1.1**

Pursuant to Section 3E1.1 of the United States Sentencing Guidelines ("Guidelines") the government moves the Court to reduce the defendant's otherwise applicable offense level by an additional level to reflect that the defendant assisted the government in the prosecution of his case by timely notifying prosecutors of his intention to enter a guilty plea, thereby permitting the government to avoid preparing for trial, and permitting the government and the Court to allocate their resources efficiently.

**Sentencing Recommendation**

**The Sentencing Guidelines**

A district court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *United States v. Gall*, 128 S. Ct. 586, 594 (2007) (citation omitted). The Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions" and are the "starting point and the initial benchmark." Id. at 594-596 (citation and footnote omitted). The district court should next consider all of the applicable factors set forth in Title 18, United States Code, Section 3553(a). Id. at 596. Indeed, the Guidelines themselves are designed to calculate sentences in a way that implements the considerations relevant to sentencing as articulated in Section 3553(a). *United States v. Rita*, 127 S. Ct. 2456, 2463-2465 (2007).

In this case the Guideline calculations result in a sentencing range of 151-188 months. The calculations take into account that the defendant collected and distributed by means of a computer a large number of images of child pornography, that the images involved prepubescent children , and that at least some of them depict images of sadistic sexual abuse of children. They

reflect as well his early acceptance of responsibility for his actions. The resulting sentencing range is one that is appropriate in light of the statutory factors that the Court considers in imposing sentence.

**Section 3553(a) Factors**

Title 18, United States Code, Section 3553(a) sets forth factors that the Court must consider in imposing sentence. We address several of them below:

<u>The Nature and Seriousness of the Offense</u>

The defendant's offense by definition is serious. He collected and distributed images of the sexual abuse of children. In so doing he re-victimized the children whose abuse is depicted in the images. In this case the National Center for Missing and Exploited Children (NMEC) identified over 800 images of dozens of identified children in the material that the defendant collected. Many of the children do not reside in the United States; of those that do, the majority have elected to not receive notice when their images are identified in new criminal cases. In this case, only one of the child pornography victims and her parents have chosen to submit victim impact statements. Their statements will be filed with the Court separately under seal pursuant to 18 U.S.C. § 3509. They express better than any submission of counsel could, the pain victims of child pornography and their families experience, not only from the initial abuse, but from the realization that images of the child's abuse are recirculated for years so that individuals such as the defendant can experience sexual gratification from viewing their humiliation.

The distribution of child pornography by means of a computer is particularly damaging to victims. Where the Internet is the distribution medium of child pornography, the degradation of these children is permanent, continuous, and impossible to eradicate. It is the ultimate

humiliation that all of the victims, whether rescued and identified or not, are left with a terrible burden to carry for the rest of their lives: the knowledge that not only were they victimized by the predators who used them to create pornographic images, but that these images remain in circulation, and are viewed repeatedly by those who derive pleasure from seeing them.  "Child pornography invariably produces great shame and guilt in the children involved, especially as they get older and more fully comprehend the enormity of their abuse and know that there is a permanent record of the degradation out there, circulating around for people to see – maybe future friends or their own children when they grow up." Dr. Victor B. Cline, Pornography's Effects on Adults & Children, http://obscenitycrimes.org/clineart.cfm, (2001).  As the Fifth Circuit has stated, "[u]nfortunately, the 'victimization' of the children involved does not end when the camera is put away."  *United States v. Norris*, 159 F.3d 926, 929 (5th Cir. 1998), *cert. denied*, 526 U.S. 1010 (1999).

      Distributing and collecting child pornography are not victimless crimes. The children depicted in the images the defendant and others collect are not cartoon characters. They are real children who are abused, often sadistically, in order to produce images that can be shared by those who enjoy watching such abuse.  The defendant, by collecting child pornography, encouraged its continued production and the resulting child abuse that is required to create it.

  The Ninth Circuit has articulated that "commercial child pornography" (images obtained from the Internet, just like those possessed and distributed by this defendant) is an  industry  targeted by Congress; moreover, the most effective method of eradicating the industry is to punish the ultimate consumer.  *United States v. Adams*, 343 F.3d 1024, 1034 (9th Cir. 2003).

           Th[e] legislative history leads us to three observations:  (1) Congress

> determined that child pornography is a multi-million dollar industry in which sexually explicit depictions of children are bought, sold, and traded interstate; (2) Congress decided to "stamp out" the market for child pornography by criminalizing the production, distribution, receipt, and <u>possession</u> of child pornography; and (3) Congress thought it could strike a blow to the industry by proscribing possession of child pornography "because those who possess and view child pornography encourage its continual production and distribution."

*Id*. at 1032, citing 136 Cong. Rec. at S4730 (emphasis in original).

In summary, the defendant's offense in this case was a serious one. It not only re-victimized children, it encouraged an industry that is based on child abuse and that depends upon consumers such as the defendant for its continued existence.

<u>Nature and Characteristics of the Defendant</u>

Two characteristics of the defendant are made clear by the record in this case: he has a longstanding sexual interest in children, and he has become skilled at concealing conduct he recognizes is illegal. Investigative reports relating to the investigation in the prior case describe the defendant's activities in some detail: he collected child pornography; he collected cut out representations of children in underwear; he kept a book of drawings of children engaged in sex acts, and bought and secreted a pair of child's underwear. A child relative reported that the defendant actually engaged in sex with him, and another child reported seeing and hearing the defendant kissing that boy. We are aware that the defendant denies the actual sexual abuse of the relative. Whether or not he engaged in the conduct alleged in that case, however, his behavior as a whole during that period reflects what can only be considered an abnormal sexual interest in children.

The facts of the instant case compel the conclusion that the defendant's sexual interest in children has not diminished; he just has become more careful in concealing it. During his on-line contacts with Detective Palchak, the defendant described his sexual fantasies to someone he obviously believed was a pedophile, but at the same time used a fictitious screen name and a telephone to which he was not the subscriber. He was careful to communicate from facilities accessible to the general public making his identification difficult. And even when he was apprehended, he minimized his conduct. [4]

During a post-arrest interview with Detective Palchak, the defendant initially claimed that he never viewed the child pornography that he distributed. Rather, he claimed, he only sent it on to others. Only when confronted with his statements in on-line conversations with Detective Palchak about the images he sent, did the defendant admit that he had viewed at least some of the child pornography that he collected and distributed.

<u>Need for Deterrence and Rehabilitation of the Defendant</u>

The defendant clearly was not deterred from collecting and distributing child pornography after being found guilty in his earlier case, placed on probation and provided with sex offender treatment. Rather than being deterred from similar conduct, he simply developed methods to avoid being detected. A substantial sentence of incarceration followed by a lengthy period of supervised release would serve to ensure to the extent it is possible to do so that the defendant will not be tempted again to engage in child exploitation offenses.  Moreover, a substantial sentence is warranted to deter others in the community who would view collecting,

---

[4] An audio recording of the interview was provided to defense counsel in discovery and is available to the Court.

viewing and distributing images of the sexual abuse of children as a victimless crime and one for which there are no serious consequences.

With respect to rehabilitation, the defendant did not benefit from sex offender treatment while on probation. He has the opportunity now to receive treatment in a structured setting within the Bureau of Prisons. Pursuant to federal law[5], a sex offender program is offered in each Bureau of Prisons geographical region. In addition, inmates may apply for an intensive residential sex offender treatment program currently offered at the Federal Medical Facility at Devens, Massachusetts. The Bureau of Prisons assists the released prisoner with information about community treatment programs and the United States Probation Department provides supervision and monitoring in accordance with conditions set by the Court at sentencing. A sentence that provides the opportunity for structure, treatment and supervision over an extended period of time would serve to protect the community, deter the defendant and others, and offer the defendant the opportunity for rehabilitation.

## Summary

The government recommends that the Court impose a sentence consisting of substantial periods of incarceration and supervised release with the specific conditions recommended in the PSR. Specifically, for the reasons stated herein, we ask that the Court sentence the defendant to a

---

[5] 18 U.S. C. § 3621(f), Sex Offender Management

period of 151 months incarceration, the low end of the advisory Guideline sentencing range, and to a period of 25 years supervised release.

                                              Respectfully submitted,

                                              CHANNING D. PHILLIPS
                                              Acting United States Attorney

BY:                            /s/
                                              PATRICIA STEWART
                                              Assistant United States Attorney
                                              D.C. Bar No. 358910
                                              555 4th Street, N.W. Room 4247
                                              Washington, D.C. 20530
                                              (202)51-7064
                                              Patricia.Stewart@usdoj.gov